ALBERT STEINBAUER v. CHARLES STONE.[1]

January 17, 1902.

Nos. 12,865—(145).

### Misstatement in Charge to Jury—Laws 1901, c. 113.

The firmly-established practice in this state requiring counsel on the trial of an action to call attention to obviously unintentional misstatements and verbal errors in the charge of the court to the jury, if deemed at all likely to be misleading; was not abrogated by the passage of Laws 1901, c. 113; and the legislature did not intend by that act to permit litigants to single out, after the trial of an action, isolated portions of the charge, assign the same as errors, and thus secure a new trial or the reversal of an order denying one, for some mere technical or verbal error or unintentional misstatement of law or fact, which could have been corrected at the trial had attention been called to it by counsel.

### Rulings—Evidence.

Various rulings on the trial of this action considered, and *held* to present no reversible error, and the evidence is examined, and *held* to sustain the verdict of the jury.

[1] Reported in 88 N. W. 754.

Action in the district court for Ramsey county to recover $989.22, and interest, for stone furnished under a written contract. The case was tried before Brill, J., and a jury, which rendered a verdict in favor of plaintiff for $1,076.25. From an order deny-ing a motion for a new trial, defendant appealed. Affirmed.

*Henry C. James*, for appellant.

*Webber & Lees*, for respondent.

BROWN, J.

This action was brought to recover a balance claimed to be due plaintiff for certain stone furnished by him to defendant under a contract between the parties, for use in the construction of a bridge at Eau Claire, Wisconsin. Plaintiff claimed in his com-plaint that he delivered to defendant two thousand twenty-one cubic yards of stone, while defendant, admitting the contract, and that certain stone was furnished thereunder, denies that any more than eighteen hundred eighty-eight cubic yards were in fact fur-nished. Defendant also set up a counterclaim for damages for the alleged failure of plaintiff to furnish the stone at the time required by the contract. Plaintiff had a verdict in the court below, and defendant appealed from an order denying a new trial.

The principal question on the trial in the court below with respect to the right of plaintiff to recover was as to the quantity of stone furnished by him under the contract; that is, the number of cubic yards. The contract provided that defendant should pay six dollars per cubic yard for all stone furnished and delivered, and the main controversy below was as to the quantity actually fur-nished. It was contended by plaintiff, and he offered evidence for the purpose of so showing, that there was a general custom among persons engaged in similar contracts and transactions to ascertain and determine the number of cubic yards by measurements from the completed structure; but his evidence tending to show such a custom fell far short of doing so, and was stricken out. It clearly appeared from his testimony that all he knew of any custom of that nature was learned from contracts he himself had made and performed. Upon this fact appearing, the court below struck out the evidence, and the case was submitted to the jury without refer-

ence to that contention. While the record is not quite clear that the evidence was stricken out, it is clear that the measurements of the completed structure were not submitted to or considered by the jury in determining the number of cubic yards of stone actually furnished by plaintiff. When the evidence failed to show a general custom in this respect, plaintiff resorted to another custom, which seems to have been acquiesced in by defendant, and that was to ascertain the number of cubic yards by weight. Upon this method of determining the controverted question evidence was offered by both parties, and such was the only evidence relied upon by plaintiff. This appears clearly from the charge of the court to the jury, and from the memorandum of the trial judge attached to the order denying a new trial.

But it is contended by appellant that, even though this evidence was not submitted to or considered by the jury, its admission resulted prejudicially to defendant. We are entirely at a loss to understand how this evidence, incomplete and valueless for any purpose, even though not stricken out, could have prejudiced the defendant before the jury, and we are unable to concur with counsel that its admission resulted to the detriment of his client's cause.

Assignments of error 4, 5, 8, 10, 11, and 12 refer to the exclusion by the trial court of certain evidence offered by defendant tending to prove the damages alleged to have been sustained by him in consequence of plaintiff's failure to furnish the stone at the times called for by the contract. One question to which an objection was sustained, was as follows:

"How much, in your judgment, would it necessarily cost to do that work, more, by reason of the stone not being delivered at the rate of four cars a day, than it would have cost if they had been delivered four cars a day that year, considering the weather and the situation thereof?"

This question called for the conclusion of the witness, and the objection to it was properly sustained. Other questions complained of by these assignments of error are substantially of a similar nature and import, and an answer thereto would amount to nothing more than a mere speculative conclusion of the witness,

and were clearly inadmissible. It may be conceded that the evidence shows that the stone was not shipped by plaintiff at the rate of four cars per day, as required by the terms of the contract; but the consequence of such failure on plaintiff's part, or the delay caused thereby in the performance of defendant's contract, and the extent or amount of damages resulting therefrom, were questions for the jury to determine, and not for the witnesses. Such questions were all fully and fairly submitted to the jury by the trial court, and we find nothing in these assignments of error to justify a new trial.

Appellant complains of two alleged errors in the instructions of the court to the jury. The court charged the jury as follows:

"Now, if the plaintiff was not in default in any of these particulars; if the stone was shipped in time, or if it was shipped in the proper method, and was properly cut at the time it was shipped, the defendant would have no cause to complain, and no right to recover damages in any event in this case."

The objection to the instruction is that the word "or" between the clauses "if the stone was shipped in time" and "if it was shipped in the proper method" should have been the conjunction "and"; that because of the use of the word "or" the jury was informed by the court that if the stone was shipped in time, "or" if it was shipped in the proper method, defendant would have no cause to complain, and no right to recover damages. Of course, if this was what the court intended, or what the jury might have understood from the instruction, it was erroneous, because it was plaintiff's duty, by the terms of his contract, to ship the stone at the time required thereby, and in the specified method, and properly cut. But this was a mere verbal error in no way prejudicial to defendant, for, taking the whole charge together, there is no possible question that the jury was in any way misled. The same may be said with reference to the other portion of the instructions which defendant singles out and complains of to the effect that defendant could recover on his counterclaim, if entitled to recover at all, such sum as he necessarily expended by reason of his men being laid off, or by reason of their having to do other kinds of work. The objection to this is that it takes from the considera-

tion of the jury the idleness of defendant's teams and machinery used in the performance of the work of constructing the bridge. Taking this instruction in connection with the whole charge, there is nothing of substance in the contention of defendant, and the assignment of error presents no reason for granting a new trial.

If counsel deemed those instructions misleading, or likely to prejudice his client's cause before the jury, the attention of the court should have been called to the matter, so that the mistake—for it was nothing more than a mistake—could have been corrected before the jury retired. Such was the firmly-established practice in this state for years prior to the passage of Laws 1901, c. 113, dispensing with the necessity of taking exceptions, and should continue to be. Prior to the passage of that act, and when exceptions were necessary to be taken in order that alleged errors might be reviewed on appeal, an exception to either portion of the charge here complained of, without specifically pointing out the particular objection urged against it, would have been wholly unavailing. The legislature did not intend by the passage of the act of 1901 to abrogate the former practice in this respect, or to permit litigants to single out, after the trial of an action, isolated portions of the charge of the court, and secure a new trial for some technical error or mistake which could have been corrected had attention been called to it at the trial; and counsel should still perform their duty to the court, and call attention to obviously unintentional misstatements and verbal errors in the charge to the jury, that the same may be corrected, if they are deemed at all likely to be misleading. Of course, this does not apply to instructions on some controlling proposition of law, but to such misstatements of fact or technical inaccuracies in matters of law or fact as are often likely to creep into a charge orally delivered to the jury.

Appellant contends that the verdict of the jury was a great injustice to him, that the evidence is clearly and palpably against it, and that it should be set aside. We have examined the evidence with care; it is very voluminous; and find no reason for disturbing the verdict on this ground. It has been approved by the learned trial court, and its judgment on this subject is of great

weight with this court in determining the sufficiency of the evidence. The main controversy on the trial was with reference to the number of cubic yards of stone furnished under the contract. The evidence on this subject offered by both parties was fully and fairly submitted to the jury, and is not so clearly and palpably against the result reached by them as to justify this court in setting the verdict aside.

The order appealed from is affirmed.